UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY LUCAS, an individual, et al., on behalf of themselves and all other similarly situated consumers,<br><br>Plaintiffs,<br><br>v.<br><br>BREG, INC., a California corporation, et al.,<br><br>Defendants. | Case No. 15-cv-258 BAS (KSC)<br><br>**ORDER:**<br>**(1) DENYING PLAINTIFFS' MOTION TO REMAND; AND**<br>**(2) GRANTING DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF MARC STERN**<br><br>**[ECFs 7, 12]** |

## INTRODUCTION

Under the Federal Class Action Fairness Act ("CAFA"), a district court may exercise jurisdiction over a class action if there is minimal diversity of citizenship between the parties, the proposed plaintiff class has at least 100 members, and the amount in controversy exceeds $5,000,000. 28 U.S.C. §1332. The parties agree that federal jurisdiction is proper in this case. However, the plaintiffs move to remand to state court, arguing that the defendants' notice of removal to federal court was not timely. ECF 7.

Although this Court shares the plaintiffs' concern that the defendants may well be forum shopping—choosing to remove after adverse rulings appear to be forthcoming from the state court judge—this is the cost the plaintiffs have assumed by filing an indeterminate pleading. Under Ninth Circuit law, the defendants' notice of removal was timely, and therefore the plaintiffs' motion to remand and for attorney's fees is **DENIED**.

## STATEMENT OF FACTS

*A. The Declaration of Marc Stern*

The plaintiffs' attorney, Marc Stern, filed a Declaration in support of the motion to remand indicating that he has developed a "considerable body of information" about the defendants from his work as litigation counsel and offered his declaration "regarding Defendants and their relationships; the history of the development of Breg's PC500; the injuries associated with the product; and Breg's concealment of the considerable risk of injury associated with continuous use of the PC500 as recommended by Breg." Stern Decl. ¶ 2, ECF 7-1. The defendants move to strike this Declaration, correctly recognizing that it violates the advocate-witness rule. ECF 12. "The advocate-witness rule generally admits of only one solution to avoid the improprieties inherent in advocate testimony. Attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness and promptly withdraw from the conflicting role." *See United States v. Prantil,* 764 F.2d 548, 553 (9th Cir. 1985).

Because the information detailed in Stern's Declarations is both irrelevant to the motion to remand and violates the advocate-witness rule, this Court **GRANTS** Defendants' Motion to Strike the Declaration of Marc Stern. ECF 12. However, this Court will take judicial notice of the documents filed in San Diego Superior Court in this case, in *Engler v. Chao, Oasis, Breg, Inc., et al.*, and in *Theriot v Breg, Inc., et al.*, as reflected in ECF 7, Exhibits 8, 14–23, and 25–31.

*B. The Complaints*

On June 13, 2011, the plaintiffs filed a putative class action in San Diego Superior Court on behalf of "all consumers [in California] and/or their insurers who purchased and/or rented BREG Polar Care products pursuant to a physician's prescription" from 1992 to the present. Compl. ¶¶ 2, 59, ECF 1-3. Those who suffered physical injury were excluded from the class. The complaint contains no mention of the potential number of class members or the potential damage requested per member.

On March 20, 2012, the plaintiffs filed their First Amended Complaint ("FAC") in state court, again on behalf of all consumers in California who purchased and/or rented BREG Polar Care products, excluding those who were physically injured. FAC ¶ 53, ECF 1-5. This time the plaintiffs specified that they were requesting replacement of each unit, which were valued between $70–$350. *Id.* at ¶ 19, ECF 1-5. Again, the complaint did not mention the potential number of class members.

On October 17, 2014, the plaintiffs filed a Second Amended Complaint ("SAC") in state court expanding the class to include "thousands of consumers throughout the United States and in California who specifically purchased and/or rented for personal use and not for resale, pursuant to a physician's prescription … cold therapy treatment." SAC ¶ 4, ECF 1-19. Again, those who suffered physical injury were excluded, and the plaintiffs alleged that "BREG is currently aware of more than 300 injuries." *Id.* at ¶¶ 9, 67. The plaintiffs sought reimbursement of the full amount of expenditures from the purchase and/or rental of the cold therapy treatment. *Id.* at ¶ 120.

Finally, on December 16, 2014, the plaintiffs filed and served a Third Amended Complaint ("TAC") in state court on behalf of:
> All consumers in the United States, who any at any [sic] time during the period 1992 through the present, purchased and/or rented a BREG Polar Care 500 for personal use, and not for resale, pursuant to

> a licensed physician's prescription, and who, prior to purchasing and/or renting said product, were exposed to a statement and/or instruction from BREG, or a health care provider, that BREG's Polar Care 500 was safe and effective for continuous use and were not told there was a material risk of bodily injury if said product was used continuously (for more than 20 minutes)."

TAC ¶ 10, ECF 1-24. The class specifically excluded any person who has suffered bodily injury or has filed a non-class legal action against the defendants for similar claims. *Id.* The TAC alleges that "[t]housands of consumers throughout the United States and in California … purchased and/or rented for personal use and not for resale, pursuant to a physician's prescription what BREG [falsely] advertised and promoted as safe and effective cold therapy treatment." *Id.* at ¶ 4. The TAC also alleges that "[a]s a result, thousands of consumers suffered serious injury. Hundreds of personal injury actions have been filed against BREG…." *Id.* Without specifying amounts, the Prayer for Relief seeks restitution for the purchase and/or rental of BREG's Polar Care-500, disgorgement of the defendants' ill-gotten gains, as well as actual and punitive damages.

*C. The State Court Litigation*

On April 26, 2012, the defendants filed a notice of related case, notifying the state court that this case was related to another case filed against the defendants: *Engler v. Chao, Oasis, Breg, Inc., et al.*, S.D. Superior Court Case No. GI0870982. ECF 7-23. On April 28, 2012, the *Engler* trial began before Judge Prager in the San Diego Superior Court. During the course of the *Engler* trial, the defendants admitted that millions of BREG Polar Care 500s had been sold and that sale of the Polar Care 500s had generated close to $100 million in revenue. ECFs 7-16, 7-17, 7-18, 7-20. In July 2012, the jury reached a verdict of $5.196 million in compensatory and $7 million punitives against Breg in the *Engler* case. ECF 7-22.

On September 25, 2012, all parties signed a stipulation and order that the present case could be transferred to Judge Prager, the trial judge in the *Engler* case, "for all purposes." ECF 7-23. On February 26, 2013, Judge Prager denied all post-

1  trial motions in *Engler*. In May, 2013, Judge Prager denied all demurrers to the
2  FAC in this case. ECF 7-33.

3       Judge Prager set a briefing schedule for discovery and class certification in
4  this case and scheduled a class certification motion for May 5, 2015. ECF 7-27. On
5  December 16, 2014, Judge Prager ordered depositions to go forward over the
6  defendants' objections and, again over the defendants' objections, allowed the
7  plaintiffs to file a TAC. ECF 7-29. On February 2, 2015, the defendants received a
8  response to admissions from the plaintiffs confirming that they were seeking in
9  excess of $5 million in this case. On February 3, 2015, Judge Prager granted the
10 plaintiffs' Motion to compel depositions and set a hearing on March 3, 2015 for
11 remaining discovery issues. ECF 7-32. On February 6, 2015, the defendants
12 removed this case to federal court. ECF 1.

### ANALYSIS

The notice of removal in a civil action must be filed within 30 days of:

(1) ... [R]eceipt by the defendant … of a copy of the initial pleading setting forth [the basis for removability; or] ...

(3) ... [R]eceipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. §1446(b). The Eleventh Circuit has held that the wording of § 1446(b) suggests the second ground of removability "requires a greater level of certainty or that facts supporting removability be stated unequivocally." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760 (11th Cir. 2010) (comparing the first ground requiring pleadings to "set forth" a claim to the second ground's heightened requirement that removability be "ascertainable").

    "[D]efendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability… Multiplying figures clearly stated in a complaint is an aspect of that duty." *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d

1136, 1140 (9th Cir. 2013) (quotations omitted). Defendants are not obligated to look through their own files to ascertain the amount in controversy to determine removability. *Id.* The grounds for removability must be within the four corners of the paper served on a defendant. Lest the determination of removability degenerate into a mini-trial as to whom knew what when, a defendant's subjective knowledge that a case is removable is irrelevant. *Harris v. Bankers Life and Cas.Co.*, 425 F.3d 689, 697 (9th Cir. 2005).

Plaintiffs who fail to make the amount in controversy clear in the initial pleadings "assume the costs [of leaving the window for removal open] associated with their own indeterminate pleadings." *Kuxhausen*, 707 F.3d at 1141. As a footnote in the K*uxhausen* case makes clear, "whether a defendant can establish that federal jurisdiction exists and the question of when the 30-day time period begins are not two sides of the same coin." *Id.* at 1141, fn. 3. Just because a defendant "*could have* ventured beyond the pleadings to demonstrate removal" does not mean "it was therefore *obligated* to do so." *Id.* (original emphasis). *See also Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (Thirty day windows limit when a defendant must remove but does not affect time when a defendant may remove. If defendants never had actual notice triggering a 30-day window, they still may remove when they learn of removability).

"Any document received prior to the receipt of the initial pleading cannot trigger the second 30-day removal period." *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 885 (9th Cir. 2014). "We also reject [plaintiff's] suggestion that a pre-complaint document containing a jurisdictional clue can operate in tandem with an indeterminate initial pleading to trigger some kind of hybrid of the first and second removal periods." *Id.*

This Court turns first to the requirement that the notice of removal be filed within 30 days of receipt of the initial pleading if it sets out the basis of

removability. The initial complaint and FAC in this case were limited to California consumers and thus were not removable since they failed to establish diversity of citizenship. The SAC expanded the class to include "thousands of consumers" throughout the United States. This appeared to meet the diversity of citizenship requirement, but it left open whether the amount in controversy exceeded $5 million. Excluded were individuals who had suffered physical injuries, and the plaintiffs reference "more than 300 injuries." Similarly, the TAC references "thousands of consumers" who are part of the class but then references the "thousands of consumers suffered serious injury" who are excluded from the class definition. Referencing the FAC, which is the only Complaint that values the replacement cost of each unit, and using a replacement cost of $70–$350, the four corners of either the SAC or the TAC fall far short of the $5 million required for removal.

Pointing to admissions made during the *Engler* case, the plaintiffs argue that the defendants knew (1) that the class numbered in the millions and (2) that the defendants had made well over $5 million in ill-gotten gains, which the plaintiffs were requesting be disgorged as part of the Prayer for Relief. However, the Ninth Circuit has made clear that to implicate the time limits of 1446(b), the grounds for removability must be within the four corners of the paper served on the defendant. Like the plaintiffs in *Carvalho*, these plaintiffs cannot use the admissions in the *Engler* case as some sort of hybrid of the first and second removal periods. All four of the amended complaints in this case are indeterminate with respect to the amount in controversy. Therefore none triggered the first 30-day removal period.

Nor do the plaintiffs point to any "pleading, motion, order or other paper" that put the defendants on notice that the amount in controversy was $5 million. Instead, the plaintiffs argue again that the defendants were "well aware on or before" the SAC had been filed that the plaintiffs would be seeking more than $5 million. The plaintiffs allege that the defendants' discovery responses produced in

March of 2014 show that millions of Polar Care 500s were sold and that the sale of these Polar Care 500s generated over $80 million in revenue. However, none of these numbers specifies how many sales should be excluded because they resulted in injury to the user. The defendants were not required to extrapolate or engage in guesswork to determine what the size of the class truly was or how much Plaintiffs were seeking in this case.[2]

Since the only document received after the filing of the Complaint in this case putting the defendants on notice that the amount in controversy exceeded $5 million was the plaintiffs' response to interrogatories served on the defendants February 2, 2015, the defendants' notice of removal filed on February 6, 2015 was timely.

Additionally, the plaintiffs argue that remand is proper because: (1) the defendants failed to file with the removal petition "a copy of all process, pleadings and orders" as required by 28 U.S.C. §1446(a); (2) the defendants stipulated to state court Judge Prager for all purposes, and this precludes removal to federal court; and (3) the defendants failed to notice the real party in interest as required by Civil Local Rule 40.2. None of these is sufficient reason to remand.

Assuming, without deciding, that the defendants were required to attach every pleading filed in the state court to their removal petition, the failure to do so does not require remand. *See Kuxhausen*, 707 F.3d at 1142 (failure to attach original complaint to its notice of removal is a "de minimis procedural defect" that was curable even after expiration of the 30-day period). And the defendants' agreement to a transfer to Judge Prager in state court does not constitute a waiver of the right to removal. At the time of the stipulation, there were no grounds for removal to federal court and the stipulation did not clearly and unequivocally

---

[2] Nor can the plaintiffs rely on earlier verdicts to establish that the amount in controversy in this case exceeds $5 million. Not only do these verdicts predate the filing of this complaint, they involve cases in which the plaintiffs were injured. These are clearly distinguishable and irrelevant in this case, in which the proposed class excludes injured individuals.

– 8 –                                                                 15-cv-258 BAS (KSC)

1  waive the right to removal. *See EIE Guam Corp. v. Long Term Credit Bank of
2  Japan, Ltd.*, 322 F.3d 635, 649 (9th Cir. 2003) (Although a party may waive its
3  right to remove by taking actions in state court manifesting its intent to have the
4  case adjudicated there and abandoning its right to a federal forum, the waiver must
5  be "clear and unequivocal" and cannot be made before the case was actually
6  removable). Finally, the defendants complied with their obligations under Civil
7  Local Rule 40.2 by identifying any parent corporation or any publicly held
8  company that owns 10% or more of their stock. Even if they did not, this has no
9  bearing on removal. Accordingly, because the defendant's notice of removal was
10 timely, the Court **DENIES** the plaintiffs' motion to remand. ECF 7.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the defendants' motion to strike Marc Stern's Declaration and **DENIES** the plaintiffs' motion to remand. ECFs 12, 7. The Court **ORDERS** Marc Stern's Declaration **STRICKEN** from the record. ECF 7-1.

**IT IS SO ORDERED.**

Dated: April 22, 2015

Hon. Cynthia Bashant
United States District Judge