UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY LUCAS, an individual; TAREK ALBABA, an individual; RIGOBERTO VINDIOLA, an individual; DAVID GAMMA, an individual; SARAH FISHER, an individual, on behalf of themselves and all other similarly situated consumers,<br><br>  Plaintiffs,<br><br>  v.<br><br>BREG, INC., a California corporation; GARY LOSSE, an individual; MARK HOWARD, an individual; and DOES 1 through 50, inclusive,<br><br>  Defendants. | Case No. 15-cv-258-BAS-NLS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT** |

Presently before the Court is Plaintiffs' motion for leave to file a fourth amended complaint. (ECF No. 36.) Defendants oppose the motion (ECF No. 40), and Plaintiffs have replied (ECF No. 43). For the reasons set forth below, the Court will deny Plaintiffs leave to amend.

**I.   BACKGROUND**

Plaintiff Stacey Lucas filed this putative class action on June 13, 2011, in the Superior Court of California, alleging, *inter alia*, claims of false advertising and

misrepresentation in violation of California consumer protection laws. (ECF No. 1-3.) The gravamen of the complaint is that Defendant Breg, a California corporation that manufactures and sells the Polar Care 500 ("PC 500") cold therapy device, engaged in a deliberately deceptive advertising campaign to conceal unsafe and defective aspects of the PC 500 from consumers and others. (Third Amend. Compl. 2:7–22.) In particular, Plaintiffs allege that Breg represented to consumers, physicians, and others that the PC 500 was safe for continuous use between 45 and 55 degrees Fahrenheit, and that it was an effective remedy for orthopedic injury, even though the company knew that neither claim was true or accurate. *Id*. On February 6, 2015, the case was removed from state court to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (ECF No. 1.)

The complaint was amended three times while in state court. On March 20, 2012, Plaintiff Lucas filed a First Amended Complaint adding a cause of action for breach of express warranty. (ECF No. 1-5.) On October 17, 2014, Plaintiff Lucas added Tarek Albaba, David Gamma, and Rigoberto Vindiola as named plaintiffs in a Second Amended Complaint that also asserted claims on behalf of a putative nationwide class of consumers. (ECF No. 1-19.) Then, on December 16, 2014, Plaintiffs filed a Third Amended Complaint adding Sarah Fisher as a named plaintiff and class representative.[1] (ECF No. 1-24.)

Plaintiffs now seek leave to add three additional named plaintiffs to the complaint: Anna Myatt, Timothy Carroll, and Paula Hamma. (ECF No. 36 ("Plaintiffs' Motion").) Plaintiffs assert that they did not know of Myatt's desire to be added as a class representative until late January 2015—that is, one month after Plaintiffs filed their Third Amended Complaint—and did not learn of Carroll and Hamma's desire to be a class representative until after Magistrate Judge Nita Stormes

---

[1] On December 17, 2015, the Court granted the parties' joint motion to dismiss class representative plaintiff Rigoberto Vindiola. (ECF No. 52.) As such, there are currently four named plaintiffs in this case.

issued her July 10, 2015 Scheduling Order. (Pls.' Mot. 2:7–11; 2:23–26.) The July 10 Scheduling Order provided that "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings must be filed by September 4, 2015" and that "class discovery must be completed by all parties by November 16, 2015." (ECF No. 25.) On September 4, 2015, the parties jointly moved to continue the deadline to amend the pleadings to September 14, 2015 so that they could "meet and confer in good faith regarding Plaintiffs' proposed motion for leave to file a Fourth Amended Complaint." (ECF No. 34.) Judge Stormes granted the joint motion. (ECF No. 35.) On September 14, 2015, Plaintiffs filed the instant motion for leave to amend, seeking to add Myatt, Carroll, and Hamma as named plaintiffs and class representatives. Defendants oppose primarily on the grounds that adding three class representatives at this stage of the litigation would result in undue prejudice. (ECF No. 40.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) governs a party's request for leave to amend a pleading. Under this provision, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has emphasized that this provision reflects a "strong policy permitting amendment," *Polling v. Morgan*, 829 F.2d 882, 885 (9th Cir. 1987), and should be applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). This liberal approach ensures that in considering motions for leave to amend federal courts are guided by the underlying purpose of Rule 15, which is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Notwithstanding a strong policy permitting amendment, leave to amend "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). The

Court considers five factors in deciding a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Foman*, 371 U.S. at 182; *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006). Not all of these factors merit equal weight, however. As the Ninth Circuit has explained, prejudice to the opposing party is the "touchstone of the inquiry under Rule 15(a)" and "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (citation omitted). In assessing whether the opposing party has met this burden, a court examines "the facts of each case . . . to determine if the threat of prejudice is sufficient to justify denying leave to amend." 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.). When denying leave to amend, a district court must provide specific reasons justifying the denial, unless the reason is otherwise apparent from the record. *See Foman*, 371 U.S. at 182 ("[O]utright refusal to grant the leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."); *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981) ("The district court must, however, exercise its discretion, and a denial without stated reasons, where the reasons are not readily apparent, constitutes an abuse of discretion."). Prejudice can be shown where a party alleges new theories late in a case or significantly increases discovery burdens on the opposing party. *Bayol v. Zipcar, Inc.*, No. 14–cv–02483–TEH, 2015 WL 4931756, at *3 (N.D. Cal. Aug. 18, 2015); *see also Johnson v. Serenity Transp., Inc.*, No. 15–cv–02004–JSC, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015) ("Ninth Circuit case law indicates that a defendant may establish prejudice by demonstrating that a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close.").

## III. DISCUSSION

Plaintiffs argue that consideration of the relevant factors weigh in favor of granting Plaintiffs' leave to add three new plaintiffs to the complaint. Most importantly, Plaintiffs contend that (1) there is no prejudice to Defendants because "although the amended complaint adds three new individuals, the causes of action and the relief requested remain precisely the same" (Pls.' Mot. 5:24–26) and (2) there is no "undue delay" because the motion for leave to amend was made within the time allowed for such motions under the Scheduling Order (Pls.' Mot. 5:3–8). Defendants argue that leave to amend would result in unfair prejudice because the deadline for class discovery is rapidly approaching and because depositions are scheduled to begin a mere 14 days after briefing on this motion is complete. Defendants contend they "cannot realistically obtain discovery responses, subpoena records . . . analyze those records, and prepare for and take the three more depositions . . . in the time remaining under the scheduling order." (Defs.' Opp'n 2:15–19.) Defendants also emphasize that Plaintiffs have amended the complaint twice before to add plaintiffs, and argue that Plaintiffs unduly delayed filing the instant motion.[2] (Defs.' Opp'n 2:7–19.)

### A. Undue Prejudice to Defendants

Defendants argue that they would be unduly prejudiced if the Court allows amendment because of the rapidly approaching deadline for class discovery and the beginning of depositions. The Court agrees. According to Judge Stormes's July 10 Scheduling Order, class discovery was to be completed by all parties by November 16, 2015. (ECF No. 25.) In addition, both parties have noted that depositions of the five current plaintiffs were scheduled to begin the week of October 26, 2015. (Defs.' Opp'n 2:14–15.) At the time briefing was concluded on the instant motion—that is, on October 12, 2015—there remained only 14 days before the beginning of

---

[2] Defendants do not argue bad faith as a reason justifying denial of leave to amend. However, the parties do debate whether amendment would be futile. Given the Court's finding that denial of leave to amend is justified on grounds of undue prejudice, the Court declines to address the parties' arguments regarding futility.

1  depositions and approximately one month before the close of class discovery. The
2  practical effect of this timeline is that granting leave to amend would have required
3  Defendants to scramble to complete additional discovery and hastily prepare for
4  unexpected depositions. Forcing Defendants to undertake this burden at this point in
5  the Scheduling Order would have undermined the research, analysis, and preparation
6  that Defendants were already conducting. The Court finds such prejudice undue under
7  the circumstances.

8  Plaintiffs downplay the prejudicial impact of introducing additional class
9  representatives at this late stage, asserting that the amendment "will not change
10 Defendants' position . . . or require the assertion of new defenses." (Pls.' Mot. 5:26–
11 28.) Plaintiffs, however, misconstrue the limits of the relevant inquiry. Whether
12 prejudice is undue is considered in light of the particular factual circumstances
13 presented, including case management benchmarks such as discovery deadlines, trial
14 dates, and whether defendant has filed a dispositive motion. *See Bayol*, 2015 WL
15 4931756, at *3 ("Prejudice can be shown where a party alleges new theories late in a
16 case, significantly increases discovery burdens, forces a defendant to re-litigate claims
17 that have already been decided in a prior stage, or delays a party's ability to collect a
18 judgment."). In appropriate circumstances, an amendment that would require
19 additional discovery, new depositions, and additional expense will justify a denial of
20 leave to amend. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir.
21 1987); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).
22 Here, the Court finds that for several reasons the backdrop of the discovery and
23 deposition timeline renders an amendment to add three named plaintiffs unduly
24 prejudicial to Defendants.

25 First, it is unlikely that Defendants could obtain written discovery responses for
26 the three additional class representatives with a month left before the close of
27 discovery. Indeed, out of the five named plaintiffs that Defendants have served with
28 discovery, only two had provided written responses at the time of briefing on the

1  instant motion.[3] (Defs.' Opp'n 3:8–10.) Plaintiffs have received multiple extensions
2  of the due date for these responses, after repeatedly failing to meet previously set
3  deadlines. (Defs.' Opp'n 3:6–10.) The Court finds that requiring Defendants to expend
4  the time and effort to prepare and serve new written discovery to additional plaintiffs
5  so close to the close of discovery and beginning of depositions, when circumstances
6  strongly suggest Defendants will not receive those responses in a timely manner, is
7  unfairly prejudicial. And even if Defendants were to serve similar discovery on the
8  additional plaintiffs, there are opportunity costs in time, attention, and money that
9  would compromise Defendants' effort to mount their defense effectively.

10  Plaintiffs dismiss this concern as overblown, arguing that there would be no
11 prejudice because the new class representatives would file "virtually identical" written
12 responses to Defendants' discovery. (Pls.' Mot. 6:4–6.) This argument, however,
13 relies on an unfair, if understandable, presupposition: that Defendants will follow the
14 pre-set discovery strategy that Plaintiffs expect them to follow. To be sure, it may be
15 extremely likely Defendants will propound the same set of written discovery to the
16 new plaintiffs as the current ones. But Plaintiffs cannot mitigate prejudice that
17 otherwise exists based on a hope that Defendants follow a particular discovery
18 strategy. Given the possibility that even responses to basic written discovery can
19 prompt a recalibration of discovery strategy, this Court finds Plaintiff's assumption
20 inappropriate and unavailing. *Cf. In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 232
21 (D.D.C. Nov. 20, 2002) ("Clearly, the Court need not, and will not, require plaintiffs
22 to use a parallel discovery strategy for all defendants."). Although the burden of
23 additional discovery, standing alone, may not always constitute undue prejudice, *see*
24 *United States v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d
25 Cir. 1989), the Court finds that imposing this burden on Defendants in the context of
26 a rapidly approaching discovery deadline and the initiation of depositions does

27
28 [3] As explained above, Plaintiff Rigoberto Vindiola was dismissed from this action on December 17, 2015.

demonstrate such prejudice. *See Jackson*, 902 F.2d at 1387–88 (upholding denial of leave to amend partly on the grounds that the opposing party would be burdened with additional discovery); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) (affirming denial of motion to amend complaint where amendment would have added additional claims requiring further discovery to be completed within five days after the motion to amend was filed).

There is a second, related set of circumstances contributing to the prejudicial impact present here. Plaintiffs fail to recognize the burden that Defendants would need to endure to retrieve the new plaintiffs' medical and other records, analyze those records, and adjust the deposition strategy accordingly—all within a matter of two weeks. Defendants note, and Plaintiffs do not refute, that it typically takes at least 40 days to subpoena medical and billing records. (Defs.' Opp'n 2:16–17.) This means that Defendants almost certainly could not have received these records until *after* the conclusion of class discovery and the depositions of the current plaintiffs. And even if Defendants received the medical records immediately, the importance of these records to Defendants' ability to test plaintiffs' recollections about medical treatment related to the PC 500 renders unfair an amendment that would force Defendants to suddenly rush their strategic planning. *See AmerisourceBergen Corp.*, 465 F.3d at 960 (9th Cir. 2006) (suggesting that undue prejudice may be found if the amendment would require defendant to undertake additional discovery that could not be completed before the discovery cutoff date). At this point in the Scheduling Order, Plaintiffs motion for leave would essentially have this Court require Defendants to shortchange discovery crucial to their defense. Although Plaintiffs seek to add new parties rather than introduce new legal theories, the importance of plaintiff-specific discovery, and the lack of adequate time to complete that discovery effectively, makes the addition of new named plaintiffs unduly prejudicial under the circumstances. *See AmerisourceBergen*, 465 F.3d at 960 (9th Cir. 2006); *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (affirming district court's denial of leave to amend when

1  the amendments would require additional discovery, a review of insurance policies
2  and state insurance law, and a reopening of discovery); *McGlinchy*, 845 F.2d at 809
3  (9th Cir. 1987) (finding the addition of new claims to a complaint unduly prejudicial
4  when the new claims would require additional discovery, new depositions, and
5  additional research and rewriting of briefs).

## B.  Undue Delay

Plaintiffs argue that there has been no undue delay in seeking leave to amend because the motion was filed within the time allotted by the Scheduling Order (Pls.' Mot. 5:3–8), and because Plaintiffs did not know that the three additional plaintiffs wanted to be joined as class representatives until after the filing of the operative complaint (*Id*. 5:12–18). In Plaintiffs' view, any delay is justified by the lack of earlier revelation of the desires of the three new plaintiffs.

This Court disagrees. First, the fact that Plaintiffs filed the motion within the time allotted by the Scheduling Order does not end the inquiry into whether the motion was unduly delayed. In assessing undue delay, the court also considers whether the moving party should have known sooner the facts raised by the amendment and the length of delay between the time a party obtains the relevant fact and seeks leave to amend. *AmerisourceBergen*, 465 F.3d at 953. Secondly, and more importantly to the present matter, although delay alone does not provide sufficient grounds for denying leave to amend, *Hurn*, 648 F.2d at 1254, a delay that results in undue prejudice to the opposing party clearly justifies denial. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187–88 (9th Cir. 1987); *Mayeaux v. La. Health Serv. & Indem. Co.* 376 F.3d 420, 427 (5th Cir. 2004) (explaining that delay is "undue" when it prejudices the nonmoving party or imposes unwarranted burdens on the court). In this regard, Defendants were correct to link their argument for undue delay with their argument that leave to amend would result in undue prejudice. (Defs.' Opp'n 2–3.) Here, although Plaintiffs' delay may not be unreasonable on its own terms, the delay must be assessed against the backdrop of a looming class discovery deadline and the

impending start of depositions. When viewed in this light, the Court finds the delay to be undue—the introduction of new plaintiffs at this stage would force Defendants to shortchange their discovery strategy, thereby undermining their defense. *See Zivkovic*, 302 F.3d 1080 (9th Cir. 2002); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138–39 (9th Cir. 1998) (affirming district court's denial of motion to amend pleadings filed two weeks before the discovery deadline). The lack of earlier revelation of the new plaintiffs' desires to be added as class representatives does not undo the prejudicial impact that would befall Defendants if the Court granted Plaintiffs' motion.

## C. Previous Amendments

"The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). As the Court explains above, in the four years this case has been litigated in state and federal court, the complaint has been amended three times—twice to add named plaintiffs. (Pls.' Mot. 1:17–2:6; Defs.' Opp'n 2:11–12.) In other words, Plaintiffs have already taken advantage of multiple opportunities to make what is essentially the same type of amendment they seek here. Plaintiffs urges the Court to discount these previous amendments because those amendments were made before the action was removed to federal court. (Pls.' Reply 3:9–10.) This argument is unpersuasive. The amendment Plaintiffs seek here is not one that suddenly became available once the case was removed; nor do Plaintiffs suggest that their motion takes on a unique vitality by virtue of being made in federal rather than state court. Put simply, the amendment sought is an amendment made twice before. Justice does not require the Court to grant Plaintiffs a third chance to do what they have repeatedly done, particularly when leave to amend would result in the prejudice described above.

## IV. CONCLUSION & ORDER

This Court is keenly aware of the strong Rule 15(a) policy favoring leave to

amend. But where, as here, Defendants have demonstrated that an amendment would result in undue prejudice, the Court is within its discretion to deny leave to amend. *Jackson*, 902 F.2d at 1387–88; *Zivkovic*, 302 F.3d at 1088. Defendants have established, and Plaintiffs have not adequately refuted, that granting leave to add three named plaintiffs to the complaint at this stage of discovery and deposition preparation would require Defendants to compromise important aspects of their defense strategy. It is at this point where the liberal standard of Rule 15(a) must yield to the Court's interest in ensuring that an opposing party is not unduly prejudiced. The combination of delay, undue prejudice, and history of previous amendments present here overcomes the usual presumption favoring leave to amend, and justifies denial of the instant motion. Accordingly, Plaintiff's motion for leave to file a fourth amended complaint is **DENIED**. (ECF No. 36.)

     **IT IS SO ORDERED.**

**DATED: January 11, 2016**

Hon. Cynthia Bashant
United States District Judge